IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

MICHAEL HANSLER                                                    PLAINTIFF

v.                              Civil No. 6:16-CV-06088-PKH-BAB

WENDY KELLEY, DEXTER PAYNE, MS.                          DEFENDANTS
FAUST, JANE DOE MAILROOM
OFFICER, CHAPLAIN N. GILLIOM, G.
MUSSELWHITE, CAPTAIN KING,
CORPORAL BENNETT, JOHN AND JANE
DOE PUBLICATION REVIEW
COMMITTEE

**REPORT AND RECOMMENDATION**

This is a civil rights action filed by the Plaintiff, pursuant to 42 U.S.C. § 1983.  Pursuant

to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable P. K. Holmes, III, Chief

United States District Judge, referred this case to the undersigned for the purpose of making a

report and recommendation.

Currently before the Court is a Motion to Dismiss by Defendants.[1]  ECF No. 12.  Plaintiff

responded on January 23, 2017.  ECF 14.

**1.      BACKGROUND**

Plaintiff filed his Complaint on August 31, 2016.  ECF No. 1.  Plaintiff alleges his

constitutional rights under the First and Fourteenth Amendments, as well as his rights under the

Religious Land Use and Institutionalized Persons Act (RLUIPA), were violated while incarcerated

at the Arkansas Department of Correction (ADC) Ouachita River Unit.  Plaintiff is a member of

---

[1] Plaintiff has been ordered to provide additional information in order to effect service on
the ADC Doe Defendants.  ECF No. 20.  However, Defendants' motion is submitted on behalf of
all ADC Defendants.

the Wiccan religion.  He alleges he was denied the right to possess, read, and study the Witches' Craft Wiccan Bible and another religious text entitled the Book of Grimoires.  ECF No. 1, p. 5. Plaintiff provided a copy of the Publication Review Committee notification that the Witches' Craft Wiccan Bible was being denied due to "Discrimination/inflammatory attitude" and nudity.  The notification was signed by Defendants Gilliom and Musselwhite.  ECF No. 1, p. 42.  Plaintiff alleges the nudity referenced in the Wiccan Bible were illustrations similar to that found "in a science class at school."  ECF No. 14, p. 4.  Plaintiff correctly notes that the Publication Review Committee notification does not mention the Book of Grimoires.  However, he did not receive either the Wiccan Bible or the Book of Grimoires.  ECF No. 1, pp. 6, 42.  He alleges there are other copies of the Wiccan Bible in the Ouachita River Unit, and he is therefore being denied rights permitted to other similarly situated inmates.  ECF No. 1, p. 5.  Plaintiff further alleges he was not notified of the confiscation of his books by the mail room or Publication Review Committee until he attempted to write the company he purchased them from when he did not receive the books. ECF Nos. 1, p. 6; 14, p. 4, n. 1.

Plaintiff further alleges he asked Defendant Gilliom, the Unit Chaplain, about holding Wiccan religious services but "could not get any cooperation."  ECF No. 1, p. 6.  He filed a grievance about the denial of Wiccan religious services, and was told they "did not have a request from a volunteer of a 'free-world Wiccan Church" to hold a weekly service inside the Unit.   He alleges the Warden and Chaplain "insinuated that it was somehow my responsibility to get a free-world person to volunteer to hold my weekly services."  ECF No. 1, p. 6.  He alleges it is the custom of the ADC to require a Wiccan inmate to make the necessary arrangements to have a free-world volunteer or sponsor conduct religious services, when the ADC provides religious services for other religions. ECF No. 1, p. 11.  He further alleges Christians are not required to "find their

2

own sponsor" because the State of Arkansas provides three paid chaplains who tend to the needs of the Christian population in the unit.  ECF No. 14, p. 4.

All Defendants are employees of the ADC.  Plaintiff organized his complaint under two claims.  Claim One is stated as "[d]enial of my right to the free exercise of my sincerely held Religious Beliefs under the First Amendment to the Constitution of the United States and the Religious Land Use and Institutionalized Persons Act (RLUIPA)".  ECF No. 1, p. 7.  This claim appears to be based upon the denial of the two religious texts in question (Wiccan Bible and Book of Grimoires), as well as the lack of access to Wiccan religious services in the ADC.  Plaintiff additionally states the ADC employees are violating his federal constitutional rights "as a direct result of Arkansas Code Annotated, (ACA) 16-123-407, which states 'The Department of Correction, the Department of Community Correction, a county jail, and a detention facility are exempt from this sub-chapter."[2]  ECF No. 1, p. 9.

Plaintiff proceeds again Defendants Kelly, Payne, and Faust in their official capacity only for Claim One.  ECF No. 1, pp. 8, 10, 12.  Plaintiff alleges that Kelley (as Director of ADC), Payne (as Deputy Director of ADC), Faust (as Warden), and Musselwhite (as Deputy Warden) established or implemented the ADC administrative directives, policies and customs in question. ECF No. 1, pp. 9, 11, 13.

Plaintiff proceeds against the remaining Defendants for Claim One in both their official and personal capacities.   ECF No. 1, pp. 15, 17 18, 20, 21, 27.  He alleges he spoke to Defendant Chaplain Gilliom on several occasions about having weekly religious services.   He alleges

---

[2] This statutory section exempts these facilities from the Arkansas Religious Freedom Restoration Act, Ark. Code Ann. §§ 16-123-401 – 407.  Defendants do not address any claim related to the state statute in their Motion to Dismiss.

Defendant Gilliom told him he would need to have a free world volunteer who was willing to go through the process of getting approved by the ADC to become an authorized religious volunteer to supervise the weekly gatherings.  As a member of the Publication Review Committee, she refused to forward his Wiccan Bible and Book of Grimoires.  ECF No. 1, p. 14.

Plaintiff alleges the Jane Doe Mailroom Officer refused to forward his Wiccan Bible and Book of Grimoires.  He was further not provided with any notification that his purchased materials had been confiscated and sent to the Publication Review Committee.  He did not receive this notification until he attempted to mail the book-seller a letter regarding the status of his order.  This letter was returned to him with a sticky note which stated "These books were sent to Publication Review.  You did receive them."  Plaintiff characterizes this as a false statement, as he did not receive these books into his possession; they were instead sent to Publication Review.  ECF No. 1, p. 13.  Plaintiff alleges Defendant Musselwhite, Defendant King, Defendant Bennett, and Defendants John and Jane Doe Publication Review Committee Members, as members of the Publication Review Committee, refused to allow him access to his Wiccan Bible and Book of Grimoires.  ECF No, 1, pp. 16, 18, 19, 21.

Claim Two is described as "[v]iolation of Due Process Clause of the 14th Amendment to the Constitution of the United States."  ECF No. 1, p. 22.  Plaintiff alleges he was not provided notification that his Wiccan Bible and Book of Grimoires had been confiscated for over thirty days.  Without the notification form, he was not able to appeal the confiscation and "convince Department of Correction employees that they [were] violating" his clearly established Constitutional rights."  Plaintiff attached a copy of a Publication Review Committee notification form, which originally had a date of May 10, 2016.  The May date was crossed out, and the date of June 16, 2016, was written in.  This form stated the reason for the denial of the Wiccan Bible

4

was "[d]iscrimination/inflammatory attitude" and nudity.  ECF No. 1, p. 42.  The form was signed by Plaintiff on June 17, 2017, and indicated he wished to appeal the decision.  The appeal was denied on August 3, 2016.  ECF No. 1, p. 43.  Neither the notification form or the appeal denial discussed the Book of Grimoires text.  The two grievances he filed concerning his Bible and Grimoires were rejected.[3]  He alleges the ADC grievance procedure was therefore intentionally made unavailable to him.  ECF No. 1, p. 23.

For Claim Two, Plaintiff proceeds against Defendant Kelley, Payne, Faust, and Jane Doe Mailroom Officer in their official capacity only.  ECF No. 1, pp. 23, 25, 26, 27, 29. He proceeds against Defendants Musselwhite, King, Bennett, and John/Jane Doe Publication Review Committee Members in both their official and personal capacity.  ECF No. 1, pp. 30, 31, 33, 34.

As relief, Plaintiff seeks an injunction requiring Defendants to provide him with his Wiccan Bible and "applicable Wiccan religious materials" he purchased.  He also requests the Court require ADC employees be required to provide him with any additional Wiccan materials he might purchase during his time in the ADC, and that this right be applied to any Unit he might be transferred to within the ADC.  He further requests Defendant be ordered to provide weekly Wiccan religious meetings and the opportunity to observe Wiccan holidays.[4] He requests that the

---

[3] Plaintiff attached grievances number OR-16-00773, dated May 26, 2016, and an unnumbered grievance dated June 1, 2016.  Both stated the decision by the Publication Review Committee was not a grievable issue per ADC policy.

[4] It is well-established that § 1983 does not confer standing because it does not confer any substantive rights.  *Tarsney v. O'Keefe*, 225 F.3d 929, 939 (8th Cir. 2000).  "If a plaintiff has not suffered an injury [due to the conduct of the defendant], there is no standing and the court is without jurisdiction to consider the action."  *Id.* at 934.  Plaintiff does not allege that he has been prevented from observing any Wiccan holidays.  He therefore does not have standing to pursue a claim concerning Wiccan holidays.

Court strike down Arkansas Code Annotated § 16-123-401.  Finally, he requests the Court assess punitive damages and any other relief the court finds proper.  ECF No. 1, p. 36.

Defendants filed their Motion to Dismiss on January 11, 2017.  ECF No. 12.  They argue Plaintiff's case against them should be dismissed for three reasons: 1) Defendants Kelley and Payne cannot be held liable to Plaintiff based on a theory of *respondeat superior* liability; 2) Plaintiff failed to state any plausible Due Process, First Amendment, or RLUIPA claims; and 3) Qualified immunity bars Plaintiff's claims against Defendants.  ECF No. 13, pp. 6-12.  Defendants further argue that the ADC policy on Wiccan religious practice has already been upheld in *Willard v. Hobbs*, Case No. 2:08CV00024WRW, 2009 WL 2497637 (E.D. Ark. Aug. 12, 2009), and therefore effectively disposes of Plaintiff's claims.  Plaintiff responded on January 3, 2017.  ECF No. 14.

## 2.   APPLICABLE LAW

Rule 8(a) contains the general pleading rules and requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "In order to meet this standard, and survive a motion to dismiss under Rule 12(b)(6), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotations omitted)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 678.  While the Court will liberally construe a *pro se* plaintiff's complaint, the plaintiff must allege sufficient facts to support their claims.  *See Stone v. Harry,* 364 F.3d 912, 914 (8th Cir. 2004).

3.     **DISCUSSION**

In sum, Plaintiff alleges the denial and confiscation of his Wiccan Bible and Book of Grimoires, the lack of paid Wiccan religious leaders on staff with the ADC, and the requirement that an approved volunteer supervise Wiccan religious services violate his constitutional rights. He requests punitive damages and retroactive injunctive relief in the form of the return of his confiscated items.  He further requests prospective injunctive relief stated as a request to be able to receive the religious materials he orders in the future, to have access to weekly Wiccan services, to have paid Wiccan religious staff in the ADC, and for the Court to strike down a state statute. Plaintiff alleges both personal and official capacity claims based upon the following federal rights: 1) RLUIPA; 2) First Amendment Free Exercise of Religion; 3) Fourteenth Amendment Due Process; and 4) Fourteenth Amendment Equal Protection.

As a preliminary matter, I will address Defendants' argument that the ADC policy on Wiccan religious practice has already been upheld in *Willard v. Hobbs*, Case No. 2:08CV00024WRW, 2009 WL 2497637 (E.D. Ark. Aug. 12, 2009), and therefore effectively disposes of Plaintiff's claims.  I do not find this argument persuasive for several reasons.

In *Willard*, the inmate was denied sea salt, an altar cloth, a ritual feather, essential oils, a ritual bell, and a special notebook for creating a "Book of Shadows."  Willard was a maximum security inmate housed in administrative segregation in the East Arkansas Regional Unit of the ADC.  *Id.* at *2.  At an evidentiary hearing, Willard testified that without the items could not practice his religion, and no reasonable alternatives existed.  *Id.*  A witness for Willard testified he did not keep a Book of Shadows because it was difficult to do using a commissary writing tablet, but he did have a Wiccan Bible and a bell.  This witness had been housed in both maximum security and general population.  *Id.* at *3.  The Defendant Chaplain stated they did not presently hold

7

Wiccan religious services, because these required the presence of a free-world sponsor or the Chaplain to hold services, and it was difficult to locate and recruit Wiccan leaders. *Id.* at *3. Another ADC Defendant testified the items had been denied for security reasons. Specifically, the feather could be sharpened into a weapon, the salt was corrosive to metals and could be used to overpower guards by throwing it in their eyes, the possibilities for an altar cloth were "endless" but included the option of using it to choke a guard, the essential oils were both slippery and flammable, and the metal on the bell he ordered was too thick. It was conceded that Plaintiff might have been permitted to have his altar cloth and possibly some of the other items if he were in general population rather than maximum security. *Id.* at *4-5.

Because the Wiccan inmates were the only group permitted to possess multiple religious items, and Plaintiff had not presented evidence suggesting that the ADC acted with a discriminatory purpose, the *Willard* court found no violation of Plaintiff's Equal Protection rights. *Id*. at. *6-7. Because Plaintiff was allowed to possess some religious items, there were legitimate safety and security concerns, the accommodation requested could have a significant impact on the security of other inmates and guards, and Plaintiff had been provided substitutes where possible for those items deemed to be safety and security hazards, the *Willard* court found there was no violation of Plaintiff's Free Expression rights. *Id*. at. *7-9. Because the imposition of upon Plaintiff's rights was in furtherance of the most compelling of state interests, and were the least restrictive means of furthering those safety and security interests, the *Willard* court found there was no violation of RLUIPA. *Id.* at. *9-10. Therefore, it was recommended that Plaintiff's claims be dismissed.

Thus, *Willard* does not address the specific questions raised in this case, and is factually distinguishable on several key points. As correctly pointed out by Plaintiff in his response, the

inmate in *Willard* was a maximum security inmate, whereas Plaintiff is in general population. Neither Plaintiff nor Defendants in this case have noted that Plaintiff was permitted any possible substitutions for his Wiccan Bible or Book of Grimoires, merely that he was permitted to have a Book of Shadows and another text.  Additionally, the items requested in *Willard* were of concern because they could be turned into weapons or, as noted by the *Willard* court, used for self-harm. *Id.* at 8.  The denial in this case is based on discriminatory/inflammatory attitude and nudity, and Plaintiff has alleged that this categorization was inaccurate or exaggerated.  Defendants have not addressed these issues in their motion other than to simply state that the Wiccan Bible was a safety and security concern.  Defendants do not address the Book of Grimoires.  Testimony in the *Willard* hearing also indicated that another inmate possessed a copy of the Wiccan Bible in the ADC.  Thus, *Willard* does not dispose of  Plaintiff's claims.

## A.  Official Capacity Claims

### 1)   Monetary Damages and Retroactive Injunctive Relief are Barred by State Sovereign Immunity[5]

"Claims against individuals in their official capacities are equivalent to claims against the entity for which they work." *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir.1998). Thus, Plaintiff's official capacity claim against Defendant is a claim against the ADC. *Id.* The ADC is a state agency.  *See Fegans v. Norris,* 351 Ark. 200, 206, 89 S.W.3d 919 (2002). States and state agencies are not "persons" subject to suit under § 1983.  *Howlett v. Rose,* 496 U.S. 356 (1990)*; Will v. Mich. Dept. of State Police*, 491 U.S. 58 (1989); *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008).  "This bar exists whether the relief sought is legal or equitable." *Williams v. Missouri,* 973 F.2d 599, 599 -600 (8th Cir. 1992) *(citing Papasan v. Allain,* 478 U.S. 265, 276 (1986)). "Congress did not

---

[5] Although this issue was not raised by Defendants, the Court may do so *sua sponte*.

abrogate constitutional sovereign immunity when enacting the law that was to become section 1983." *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991) (*citing Quern v. Jordan,* 440 U.S. 332, 342 (1979)).

The Defendants in this case are all employees of Arkansas Department of Correction (ADC).  As such, the official capacity claims against them for monetary damages or retroactive injunctive relief are barred by sovereign immunity.  Plaintiff's official capacity claims for punitive damages are also barred by sovereign immunity.  Likewise, his official capacity claims for retroactive injunctive relief, such as having his religious books returned to him, are likewise barred.

### 2)  Prospective Injunctive Relief

This leaves Plaintiff's claims for prospective injunctive relief, stated as a request to be able to receive the religious materials he orders in the future, to have access to weekly Wiccan services, to have paid Wiccan religious staff in the ADC, and for the Court to strike down a state statute.

Under the exception set forth in *Ex Parte Young,* 209 U.S. 123 (1908), "state officials may be sued in their official capacities for prospective injunctive relief without violating the Eleventh Amendment." *Monroe v. Arkansas State University,* 495 F.3d 591, 594 (8th Cir. 2007). "In determining whether this exception applies, a court conducts a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *281 Care Committee v. Arneson I,* 638 F.3d 621, 632 (8th Cir. 2011) (internal quotation marks and citation omitted).  However, a plaintiff may not sidestep the Eleventh Amendment by merely invoking an official capacity claim for prospective injunctive relief. Instead, "any probe into the existence of a *Young* exception should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute." *281 Care Comm. I,* 766 F.3d at

797 (quoting *Okpalobi v. Foster,* 244 F.3d 405, 417 (5th Cir. 2001) (internal quotations and modification signals omitted). *See e.g. Balogh v. Lombardi,* 816 F.3d 536, 544-546 (8th Cir. 2016) (Director of Missouri Department of Corrections was immune from suit under the Eleventh Amendment because his authority to choose the members of the execution team was administrative or ministerial, and "not analogous to enforcing the statutes non-discretionary provision though a civil or criminal prosecution.").

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). Therefore, when determining if a cognizable claim for official capacity prospective injunctive relief has been plead "the critical question is the extent of each official's involvement with the enforcement of the allegedly unconstitutional law or policy." *Stone v. Jesson*, 11-CV-0951 (WMW/HB), 2017 WL 1050393, at *5 (D. Minn. Mar. 17, 2017) (citing *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014). *See e.g.* Randolph v. Rogers, 253 F.3d 342, 345-46 (8th Cir. 2001) (hearing-impaired inmate's official capacity prospective injunctive relief claims for ADA and Rehabilitation violations were moot against several Missouri Department of Corrections (MDOC) officials after he was transferred to a facility where they had no authority or power; however his claim against the MDOC Director could proceed because she had authority over the entire MDOC and could therefore enforce an injunction); *Stone*, 2017 WL 1050393, at *5-6 (allegation that Clinical Director and Executive Director of Minnesota Sex Offender Program (MSOP) had authority to direct and supervise implementation of the Media Policy was sufficient, whereas the mere allegation that a Defendant was the Director of the MSOP was not).

Thus, in order to determine if Plaintiff's official capacity prospective injunctive relief claims may survive the motion to dismiss, the Court must first determine if Plaintiff has stated any

cognizable violations of federal law.  If he has, then the Court must determine if Plaintiff has alleged sufficient facts indicating any of the named Defendants had sufficient direct involvement or authority concerning the alleged violation to survive the motion to dismiss.

### a) RLUIPA Claim

"To make out a prima facie RLUIPA claim against a state official, an inmate must show, as a threshold matter, that there is a substantial burden on his ability to exercise his religion. . . Absent this showing, the state retains its sovereign immunity." *Van Wyhe v. Reisch*, 581 F.3d 639, 655 (8th Cir. 2009) (internal quotations and citations omitted).  In order to constitute a substantial burden, the government policy or actions:

> must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 988 (8th Cir. 2004) (internal quotations and modifications omitted).

Defendants argue that Plaintiff's ability to exercise his religion has not been substantially burdened by the denial of the Wiccan Bible, Book of Grimoires, or lack of religious services or paid leaders because ADC policy permits Plaintiff to possess other Wiccan texts and religious items. ADC policy also permits religious services to be held with an approved free world sponsor in charge of the service. ECF No. 13, p. 13.  They state there is currently no request on file with the ADC from a free-world Wiccan church to hold services.   They further argue the First Amendment only requires that the ADC "not make any policy that prevents Plaintiff from exercising his religion without a legitimate penological interest for doing so. It does not require the ADC to provide the means for each inmate to practice their preferred religion at the expense

and effort of the ADC." ECF No. 13, p. 8.  Finally, they argue ADC policy permits a Wiccan inmate to possess "The Book of Shadows, small bell (not to exceed 1 ½" tall), chalice (not to exceed 6" tall, made of a non-hazardous material, and less than $50 value), and a religious text." ECF No. 13, p. 9).  Defendants argue this policy has been upheld in *Willard*.

The lack of paid Wiccan religious leaders on staff in the ADC, and the requirement that an approved volunteer supervise Wiccan religious services, do not substantially burden Plaintiff's ability to exercise his religion.  It is well established that prisoners do not have a constitutional right to the religious advisor of their choice. *See Blair–Bey v. Nix,* 963 F.2d 162, 163–64 (8th Cir.1992), *cert. denied* 506 U.S. 1007 (1992) ("The Constitution does not require that a religious advisor be provided for every sect represented in a penitentiary.").  Nor does the requirement that an approved volunteer supervise religious services constitute a substantial burden on religious practice.  *Jihad v. Fabian*, 680 F. Supp. 2d 1021, 1027 (D. Minn. 2010) (citing *Tisdale v. Dobbs,* 807 F.2d 734, 738–39 (8th Cir. 1986).  Further, Plaintiff has not alleged that he attempted to find a volunteer and was unable to, or that the ADC has in some way prevented him from seeking out a volunteer.  Rather, he complains that he is being asked to do so.  This does not state a violation of Plaintiff's federal constitutional rights.

The law regarding the denial of Plaintiff's Wiccan Bible and Book of Grimoires pursuant to ADC policy is not similarly well-established.  Neither the Eighth Circuit nor any federal court in either of the Arkansas federal districts appears to have examined the constitutionality of the ADC's current policy as to the Wiccan Bible or Book of Grimoires.  The Court further notes that the ADC policy specifically permits possession of another religious text in addition to the Book of Shadows.  The role of the Book of Shadows versus the Wiccan Bible and Book of Grimoires in the Wiccan religion is unclear based on the current record in this case.  Further, this issue has not

been addressed by the Defendants.

Plaintiff has alleged that denial of the Wiccan Bible and other religious material has made him "unable to effectively practice my sincerely held Religious Beliefs." He further argues that inmates of other religions are permitted to possess and read their Bibles, and other Wiccans are permitted their Bible. The term "bible" indicates a "sacred scripture" for a religion or a "publication which is preeminent" in authoritativeness or wide readership.[6] At least one other court has described the Book of Shadows as "a form of spiritual journal." *Rouser v. White*, 630 F. Supp. 2d 1165, 1172 (E. D. California 2009); *see also McAlister v. Livingston*, 348 Fed. App'x. 923, 926 (5th Cir. 2009) (unpublished) (the Book of Shadows is "a diary or blank book in which practitioner makes entries describing spiritual experiences"); *LaPlante v. Massachusetts Dept. of Correction*, 89 F. Supp. 3d 235, 252 (D. Mass. 2015) (practitioners must "record their religious practice in their Book of Shadows). It does not appear that a journal or blank book is the equivalent of a "bible" for the purposes of religious practice.

Plaintiff proceeds against all Defendants in their official capacity. Plaintiff alleged that Kelley (Director of ADC), Payne (Deputy Director of ADC), Faust (Warden), and Musselwhite (Deputy Warden) established or implemented the ADC policies and customs in question. In his Response to the Motion to Dismiss, Plaintiff alleges he is not bringing claims against Defendants Payne and Kelley based solely on their supervisory positions. Instead, he brings the claims against them for their responsibility for implementing unconstitutional policies and customs. ECF No. 14, p. 2. Plaintiff also alleges that Gilliom, Musslewhite, King, Bennett, and Doe Publication Committee Review Committee Members are members of the Publication Review Committee

---

[6] https://www.merriam-webster.com/dictionary/bible (last visited June 1, 2017).

which used the unconstitutional ADC policy to deny his religious texts.  Plaintiff alleges the Doe Mailroom Defendant confiscated his texts under an unconstitutional ADC policy.  Thus, Plaintiff has alleged sufficient facts to show that these Defendants had the authority to either establish or enforce ADC publication policies.  This is sufficient, at least at this stage of the litigation, to state a plausible claim for official capacity prospective injunctive relief under RLUIPA against all Defendants regarding Plaintiff's Wiccan Bible and Book of Grimoires.

### b)  First Amendment Free-Exercise Claim

"Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley,* 482 U.S. 78, 84 (1987).  "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987); *see also Cruz v. Beto,* 405 U.S. 319 (1972).  This right, however, is not without limitation. The Supreme Court has recognized that "incarceration brings about the necessary withdrawal or limitation of many privileges and rights." *O'Lone,* 482 U.S. at 348. "The free exercise right is limited insofar as a prisoner's adherence to religious practices may be regulated by prison authorities, so long as such regulations are 'reasonably related to legitimate penological interests.'" *Murphy v. Carroll,* 202 F.Supp.2d 421, 424 (D.Md.2002) (*quoting Turner,* 482 U.S. at 89; *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348–349 (1987); *Cruz,* 405 U.S. at 322); *see also Thomas v. Gunter,* 32 F.3d 1258, 1259–60 (8th Cir.1994).

In analyzing a First Amendment free exercise claim, the court first addresses the "threshold issue of whether the challenged governmental action 'infringes upon a sincerely held religious belief,' and then app[ies] the *Turner* factors to determine if the regulation restricting the religious practice is 'reasonably related to legitimate penological objectives.'" *Murphy v. Missouri*

15

*Department of Corrections,* 372 F.3d 979, 983 (8th Cir. 2004). "Prison regulations that infringe on the constitutional rights of prisoners are judged by their reasonableness. Prison officials are not required to choose the least restrictive means possible in furthering administrative interests." *Salaam v. Lockhart,* 905 F.2d 1168, 1171 (8th Cir.1990).

As discussed above, the lack of paid Wiccan religious leaders in the ADC, and the requirement that an approved volunteer supervise religious services, do not substantially burden Plaintiff's ability to exercise his religion. It is therefore not necessary to address the *Turner* factors as to these claims by Plaintiff. *See Gladson v. Iowa Dept. of Corrections*, 551 F.3d 825, 833 (8th Cir. 2009) ("If the prisoner fails to put forth sufficient evidence that his ability to practice his religion has been substantially burdened, then the court need not apply the *Turner* test to the Free Exercise claim and the strict scrutiny test to the RLUIPA claim.")

In addressing the First Amendment free-expression claim, Defendants relied upon the *Willard* case. Although *Willard* does address the *Turner* factors, as discussed above, *Willard* is factually distinguishable from the present case. Further, Plaintiff's description of the drawings in the Wiccan Bible sufficiently raises a question as to whether the denial of the Defendant's texts on the grounds of nudity and inflammatory material may have been an exaggerated response to legitimate safety and security concerns. In a First Amendment "as-applied" prison censorship challenge, while the court should recognize and defer to the expertise of prison officials, it must conduct an independent review of evidence to determine if there has been an exaggerated response to prison concerns. *Murchison v. Rogers*, 779 F.3d 882, 888 (8th Cir. 2015). Prison officials must present "some specific evidence of why this particular item implicates prison concerns." *Id.* No such evidence has been produced by Defendants, and in fact, at the Motion to Dismiss stage, none should be considered. Plaintiff's official capacity First Amendment free-expression claims for

16

prospective injunctive relief as to his Wiccan Bible and Book of Grimoires therefore must remain for further review against all Defendants.

### c) Fourteenth Amendment Due Process Claim

Plaintiff alleges he did not receive notice that his books had been confiscated until he attempted to write the book retailer to inquire as to the status of his order.  He also appears to allege the delay in notification denied him the opportunity to grieve the confiscation.  Plaintiff attached a copy of the denial notice, which discussed his Wiccan Bible, but not the Book of Grimoires. ECF No. 1, pp. 42-43.  He also attached copies of grievances filed, which noted that decisions of the Publication Review Committee are not grievable issues.  ECF No. 1, pp. 38-41.  Defendants argue Plaintiff does not have a constitutional right to a grievance process.  ECF No. 1, pp. 6-7.

Plaintiff has not stated a cognizable due process claim for denial of the grievance procedure regarding his Wiccan Bible.  "Inmates do not have a constitutionally protected right to a grievance procedure. Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the . . . grievance procedure is not actionable under § 1983." *Ashann–Ra v. Commonwealth of Virginia,* 112 F.Supp.2d 559, 569 (W.D. Va. 2000) (citations omitted); *see also Lombolt v. Holder,* 287 F.3d 683, 684 (8th Cir. 2002) (denial of grievances does not state a substantive constitutional claim); *Buckley v. Barlow,* 997 F.2d 494, 495 (8th Cir. 1993) ("no constitutional right was violated by the defendants' failure, if any, to process all of the grievances [Plaintiff] submitted for consideration"); *Adams v. Rice,* 40 F.3d 72, 74 (4th Cir. 1994) (inmates have no constitutional right to grievance procedure); *Blagman v. White,* 112 F. Supp.2d 534 (E.D. Va. 2000) (inmate has no constitutional entitlement to grievance procedure), *aff'd,* 3 Fed.App'x. 23 (4th Cir. 2001).

"Rather, prison inmates have a constitutional right to petition the government for redress

through a right of access to the courts." *Blagman,* 112 F.Supp.2d at 542 (citing *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991)). A jail's "refusal to entertain such grievances does not compromise the inmate's constitutional rights, as access to the courts would still be available." *Id.* (citation omitted). "[A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005).

Plaintiff was notified of the confiscation of his Wiccan Bible, and appealed that confiscation.  Plaintiff filed grievances concerning his books, and was told that decisions of the Publication Review Committee were not grievable.  He then filed this lawsuit.  He was therefore afforded his constitutional right to petition the court concerning his Wiccan Bible.  Plaintiff has therefore failed to state a cognizable due process violation concerning his Wiccan Bible.

Plaintiff has, however, sufficiently alleged a due process claim for the Book of Grimoires. When prisoner mail is rejected by a detention facility, prisoners have a procedural due process right "to be notified of the rejection and have a reasonable opportunity to protest the decision." *Bonner v. Outlaw*, 552 F.3d 673, 676 (8th Cir. 2009).  None of documents submitted by either party show that Plaintiff received notice regarding the Book of Grimoires, or that he was given the opportunity to appeal the rejection of the Book of Grimoires.  He has therefore sufficiently plead an individual due process claim for the lack of notice for and the ability to appeal the rejection of the Book of Grimoires.  He does not, however, allege that this lack of notice was due to a policy or custom of the ADC.  Therefore, he has not stated any cognizable official capacity claims for the Book of Grimoires.

### d) Fourteenth Amendment Equal Protection Claim

Although not labelled as such by Plaintiff, it appears that Plaintiff attempted to allege an Equal Protection claim.  Specifically, Plaintiff alleges inmates from other religions are permitted

to have their Bibles, while he is not.  He also alleges other Wiccan inmates are permitted to have a Wiccan Bible, while he is not.  Further, he alleges the ADC provides paid chaplains and regular services for some religions, but not Wiccans.

The Equal Protection Clause of the Fourteenth Amendment requires that "all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439 (1985).  "In order to establish such an equal protection claim, a prisoner must show that he is treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a "fundamental right." *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008).  "Religion is a suspect classification." *Id.* at 816 (8th Cir. 2008).  However, "unequal treatment of persons who are entitled to be treated alike, is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination."  *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (internal quotations omitted).

Taking Plaintiff's allegations of different treatment as true, Plaintiff has not alleged the ADC acted with a discriminatory purpose.  Plaintiff has alleged that other practitioners of Wicca have been permitted possession of a Wiccan Bible, thus there does not appear to be specific ADC policy against Wiccan Bibles.  Nor does the fact that Plaintiff did not receive his Wiccan Bible when other Wiccan practitioners allegedly did, alone, state an unequal protection claim.  *See e.g. Weiler v. Purkett*, 137 F.3d 1047, 1052 (8th Cir. 1996) (internal quotations omitted) ("A few individual examples of unequal treatment are insufficient to provide more than minimal support to an inference of class-wide purposeful discrimination.").

 Further, as discussed above, the ADC is not required to have paid religious staff for each sect of every religion which may be represented in an ever-changing inmate population.  Instead,

19

as stated in the grievance response provided by Plaintiff, the ADC has policies in place for free-world sponsors of all religions to become approved to hold services.  ECF No. 1, p. 41; 13, p. 3. There is no allegation by Plaintiff that this policy was limited to Wiccans.  Based on this information, it does not appear that Plaintiff has stated a plausible official capacity Equal Protection claim based on denial of his Wiccan Bible or Book of Grimoires, the lack of paid Wiccan religion staff, or the lack regular Wiccan religious services held by paid staff.

### B.  Personal Capacity Claims

#### 1)  Prospective Injunctive Relief

Section 1983 "does not permit individuals to seek prospective injunctive relief against state actors in their personal capacities." *Freeman v. Budnick*, Case No. 2015 WL 1404141, *2 (E.D. Ark. March 26, 2015) (citing *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) ("a declaration that the policy is unconstitutional and an injunction barring the defendants from implementing the policy in the future—can be obtained only from the defendants in their official capacities, not as private individuals.") Thus, Plaintiff is barred from bringing personal capacity prospective injunctive relief claims against the ADC Defendants.  Personal capacity claims against state officials are otherwise not barred.  *See Egerdahl v. Hibbing Community College*, 72 F.3d 615, 619 (8th Cir, 1995).

#### 2)  Monetary Damages and Retroactive Injunctive Relief

##### a)  RLUIPA

As discussed above, Plaintiff's allegations that he was denied two religious texts central to the practice of his faith – particularly the Wiccan Bible - states a cognizable claim that his ability to practice his religion was substantially burdened.  These allegations therefore support Plaintiff's personal capacity claims against Defendants Gilliom, Musselwhite, King, Bennett, Doe Mailroom

Officer, and John/Jane Doe Publication Review Committee Members.

### b) First Amendment Freedom of Expression – Wiccan Bible and Book of Grimoires

As discussed above, I have not been provided with sufficient evidence to determine, through independent review, if there has been an exaggerated response to prison concerns regarding Plaintiff's requested religious texts. Therefore, Plaintiff's personal capacity Freedom of Expression claims against Defendants Gilliom, Musselwhite, King, Bennett, Doe Mailroom, and Doe Publication Review Committee must remain for further review.

### c) Fourteenth Amendment Due Process – Book of Grimoires

As discussed above, Plaintiff has alleged a plausible Due Process claim concerning the lack of notice or any opportunity to appeal the denial and confiscation of his Book of Grimoires.  His personal capacity claims against Doe Mailroom Officer who failed to send him his notice, and the publication review committee members, Defendants Gilliom, Musselwhite, King, Bennett, and John/Jane Doe Publication Review Committee Members, who reviewed and denied him the text therefore remain.

### d) Fourteenth Amendment Equal Protection

As discussed above, Plaintiff provided no allegations or evidence that the ADC or any of the individual Defendants acted with a discriminatory purpose in the denial of his requested texts. He has therefore not alleged any plausible personal capacity Equal Protection claims.

### C.  Qualified Immunity

Defendants argue that, even if the Court finds Plaintiff has stated any plausible claim for relief, they are entitled to qualified immunity on all claims.  Analyzing a claim of qualified immunity requires a two-step inquiry. *Jones v. McNeese,* 675 F.3d 1158, 1161 (8th Cir. 2012).

"An official is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation." *Robinson v. Payton,* 791 F.3d 824, 828 (8th Cir. 2015). "Unless the answer to both these questions is yes, the defendants are entitled to qualified immunity." *Krout v. Goemmer,* 583 F.3d 557, 564 (8th Cir. 2009).

Defendants argue the Eighth Circuit has repeatedly held that there is no constitutional right to a grievance procedure, and that the ADC's policy regarding Wiccan religious items has been upheld under both the First Amendment Free-Exercise Clause and RLUIPA in *Willard*. Therefore, the individual Defendants could not have had fair warning that their alleged conduct was unconstitutional. ECF No. 13, pp. 11-12.

Defendants are correct in their argument concerning the lack of a constitutional right to a grievance procedure, and it is recommended above that this claim be dismissed. However, as also discussed above, the *Willard* case, relied on Defendants as precedent, does not address the specific issues raised in Plaintiff's claims. The Plaintiff's *claims*, when viewed in a light most favorable to him, state claim of violation of his religious rights under the First Amendment. This right was clearly established at the time of the alleged deprivation. An analysis of whether or not qualified immunity is applicable in a particular case requires "the district court to conduct *an independent review of the evidence* to determine if the officials have demonstrated an exaggerated response to those penological concerns in relation to a particular" claim. *Payne v. Britten*, 749 F.3d 697, 702 (8th Cir. 2014) (emphasis added). This case is before me on a motion to dismiss for failure to state claim on the pleadings. Defendants have offered no evidence at all regarding their motion, and rightfully so, as it is a motion based on the pleadings in this case. I have no evidence before me, and therefore do not have sufficient information to determine if qualified immunity is appropriate

for any of the remaining claims.  It is premature, based on the status of the litigation at this time, to rule on the defense of qualified immunity.

**4.     CONCLUSION**

Accordingly, I recommend Defendants' Motion to Dismiss (ECF No. 12) Be **GRANTED** in part and **DENIED** in part.

*I recommend the following as to Plaintiff's official capacity claims for all Defendants:*

1.      Monetary damages and retroactive injunctive relief claims be dismissed with prejudice;

2.      Prospective injunctive relief claims under RLUIPA for the lack of paid Wiccan religious leaders on staff, or the requirement that an approved volunteer lead Wiccan services be dismissed without prejudice;

3.      Prospective injunctive relief claims under RLUIPA regarding Plaintiff's Wiccan Bible and Book of Grimoires remain for further consideration;

4.      Prospective injunctive relief for First Amendment Free Expression claims for the lack of paid Wiccan religious leaders on staff, or the requirement that an approved volunteer lead Wiccan services be dismissed without prejudice;

5.      Prospective injunctive relief for First Amendment Free Expression claims regarding Plaintiff's Wiccan Bible and Book of Grimoires remain for further consideration;

6.      Prospective injunctive relief for Fourteenth Amendment Due Process claims for Plaintiff's Wiccan Bible be dismissed without prejudice;

7.      Prospective injunctive relief for Fourteenth Amendment Due Process claims for Plaintiff's Book of Grimoires remain for further consideration;

8.      Prospective injunctive relief claims for Fourteenth Amendment Equal Protection for the lack of paid Wiccan religious leaders on staff, or the requirement that an approved

volunteer lead Wiccan services be dismissed without prejudice;

9.      Prospective injunctive relief for Fourteenth Amendment Equal Protection claims for Plaintiff's Wiccan Bible and Books of Grimoires be dismissed without prejudice;

10.     Plaintiff's claims regarding Ark. § Code. 16-123-401 remain pending consideration of the federal claims.

*I recommend the following as to Plaintiff's personal capacity claims against Defendants Gilliom, Musselwhite, King, Bennett, Doe Mailroom Officer, and Doe Publication Review Committee Members:*

1.      Prospective injunctive relief claims be dismissed with prejudice;

2.      Monetary damages under RLUIPA for the lack of paid Wiccan religious leaders on staff, or the requirement that an approved volunteer lead Wiccan services be dismissed without prejudice;

3.      Monetary damages and retroactive injunctive relief claims under RLUIPA regarding Plaintiff's Wiccan Bible and Book of Grimoires remain for further consideration;

4.      Monetary damages for First Amendment Free Expression claims for the lack of paid Wiccan religious leaders on staff, or the requirement that an approved volunteer lead Wiccan services be dismissed without prejudice;

5.      Monetary damages and retroactive injunctive relief claims for First Amendment Free Expression claims regarding Plaintiff's Wiccan Bible and Book of Grimoires remain for further consideration;

6.      Monetary damages and retroactive injunctive relief for Fourteenth Amendment Due Process for Plaintiff's Wiccan Bible be dismissed without prejudice;

7.      Monetary damages and retroactive injunctive relief claims for Fourteenth Amendment Due

Process for Plaintiff's Book of Grimoires remain for further consideration;

8.      Monetary damages for Fourteenth Amendment Equal Protection claims for the lack of paid Wiccan religious leaders on staff, or the requirement that an approved volunteer lead Wiccan services be dismissed without prejudice;

9.      Monetary damages and retroactive injunctive relief for Fourteenth Amendment Equal Protection claims for Plaintiff's Wiccan Bible and Books of Grimoires be dismissed with prejudice;

10.     Plaintiff's claims regarding Ark. § Code. 16-123-401 remain pending consideration of the federal claims.

I also recommend the Defendants' claim of qualified immunity be denied at this time.  This matter is before the Court on a motion to dismiss based on the pleadings.  There has been no evidence presented which would allow the Court to perform a proper analysis of the claim of qualified immunity as required by *Payne v. Britten*, 749 F.3d 697, 702 (8th Cir. 2014).  Defendants may certainly seek summary judgment on the issue of qualified immunity as appropriate.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  Plaintiff is reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **20th day of July 2017.**

/s/  Barry A. Bryant
_____
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE