IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

MICHAEL HANSLER                                                           PLAINTIFF

v.                              Civil No.: 6:16-CV-06088

WENDY KELLEY (Director, ADC),                                            DEFENDANTS
DEXTER PAYNE (Deputy Director ADC),
MS. FAUST (Ouachita River Unit (ORU)
Warden), TERRIE DYER (ORU Mailroom
Officer), CHAPLAIN N. GILLION[1] (ORU
Chaplain), G. MUSSLEWHITE (ORU
Deputy Warden), KING (ORU Captain),
BENNETT (ORU Corporal), CRYSTAL R.
LITTLETON (Grievance Office), DEPUTY
WARDEN ANTHONY JACKSON,
MAILROOM SUPERVISOR SUE ALFORD

**ORDER**

Plaintiff proceeds in this matter *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983. Currently before the Court is Defendants' Motion for Summary Judgment. (ECF No. 58.).

**I. BACKGROUND**

Plaintiff filed his Complaint on August 31, 2016. (ECF No. 1). Plaintiff is a member of the Wiccan religion and alleges his constitutional rights under the First and Fourteenth Amendments, as well as his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), were violated while incarcerated at the Arkansas Department of Correction ("ADC") Ouachita River Unit. ("ORU"). Specifically, he alleges the denial and confiscation of his Wiccan Bible and Book of Grimoires, the lack of paid Wiccan religious leaders on staff with the ADC, and the requirement that an approved volunteer supervise Wiccan religious services violate his

---

[1] The correct spelling of Defendant Gillion's name is Gillom. (ECF No. 58-11).

1

constitutional rights. (*Id*. at 5-36). Plaintiff also alleges that these violations are the "direct result" of Ark Code. § 16-123-401. (*Id*. at 9).

On January 11, 2017, Defendants Bennett, Faust, Gillion, Kelley King, Musselwhite, and Payne filed a Motion to Dismiss for Failure to State a Claim. (ECF No. 12). On August 27, 2017, the Court entered an Order granting in part and denying in part the Motion to Dismiss. (ECF No. 27). Plaintiff's official capacity prospective injunctive relief claims concerning his Wiccan Bible and Book of Grimoires, RLUIPA and First Amendment Free Expression Claims regarding his Wiccan Bible and Book of Grimoires, and his Fourteenth Amendment Due Process Claim regarding his Book of Grimoires remained for further consideration. Review of Plaintiff's Ark. Code § 16-123-401 claim was deferred pending consideration of his federal claims. (*Id*. at 23-25).

On December 21, 2017, the Court entered an Order granting Plaintiff's Motion to add Defendant Littleton, Vent and Jackson as Defendants in the case in place of the previous John and Jane Doe ORU Publication Review Committee Defendants. (ECF No. 41). On April 13, 2018, the Court entered an Order adding Defendants Dyer and Alford in place of the Jane Doe ORU Mailroom Officer Defendant. (ECF No. 54).

On June 29, 2018, Defendants filed the current Motion for Summary Judgment. (ECF No. 58). On July 2, 2018, the Court entered an Order directing Plaintiff to respond to the Motion, which he did on August 20, 2018. (ECF Nos. 64, 67-69).

Defendants argue they are entitled to summary judgment in this case because: 1) Plaintiff's claims for injunctive relief against Defendants Faust, Jackson, Gillion, Musselwhite, King, Bennett, Littleton, Dyer, and Alford are now moot; 2) Plaintiff failed to establish any violation of his constitutional rights, or rights under RLUIPA; and 3) Defendant are entitled to qualified immunity because Plaintiff failed to establish any violations of his constitutional rights or rights

2

under RLUIPA. (ECF No. 58 at 1-2). Defendants further argue that because they are entitled to summary judgment, the Court should decline to exercise supplemental jurisdiction over Plaintiff's Ark. Code § 16-123-401 claim. (*Id*. at 2).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. ANALYSIS

### A. Official Capacity Claims for Prospective Injunctive Relief Against Ouachita River Unit Employees Faust, Jackson, Gillion, Musselwhite, King, Bennett, Vent, Littleton, Dyer and Alford

Plaintiff filed his Complaint while he was incarcerated in the ADC Ouachita River Unit and his allegations concerned issues which occurred within the Ouachita River Unit. (ECF No. 1 at 2). On October 19, 2017, he was transferred to the ADC Varner Unit. Defendants Faust, Jackson, Gilliom, Musselwhite, King, Bennett, Vent, Littleton, Dyer and Alford are employed at the Ouachita River Unit. Their power and authority to act is thus limited to the Ouachita River Unit. (ECF No. 59 at 11). Plaintiff's transfer to the Varner Unit therefore rendered his Complaint and request for prospective injunctive relief against these Defendants moot. *See Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (holding an inmate's First Amendment claims regarding denial of items to perform religious practices moot once he was transferred from one state penitentiary facility to another state penitentiary facility). *See also Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985) (holding an inmate's claims regarding prison conditions were moot once the inmate was transferred and no longer subject to those conditions). Therefore, Plaintiff's official capacity claims for prospective injunctive relief against these Defendants must be dismissed as moot. *See Church of Scientology v. United States,* 506 U.S. 9, 12 (1992) (A federal court has no authority to issue opinions on moot questions of law).

### B. RLUIPA and First Amendment Free Expression Claims – Wiccan Bible and Book of Grimoires

Plaintiff failed to put forth sufficient evidence showing that his ability to practice his religion has been substantially burdened by the denial of this particular version of the Wiccan Bible or the Book of Grimoires.

Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987); *see also Cruz v. Beto,* 405 U.S. 319 (1972). This right, however, is not without limitation. The Supreme Court has recognized that "incarceration brings about the necessary withdrawal or limitation of many privileges and rights." *O'Lone,* 482 U.S. at 348. "The free exercise right is limited insofar as a prisoner's adherence to religious practices may be regulated by prison authorities, so long as such regulations are 'reasonably related to legitimate penological interests.'" *Murphy v. Carroll,* 202 F. Supp. 2d 421, 424 (D. Md. 2002) (quoting *Turner,* 482 U.S. at 89; *O'Lone,* 482 U.S. at 348–349; *Cruz,* 405 U.S. at 322); *see also Thomas v. Gunter,* 32 F.3d 1258, 1259–60 (8th Cir. 1994).

When faced solely with a First Amendment free exercise claim, the court typically first addresses the "threshold issue of whether the challenged governmental action 'infringes upon a sincerely held religious belief,' and then app[ies] the *Turner* factors to determine if the regulation restricting the religious practice is 'reasonably related to legitimate penological objectives.'" *Murphy v. Missouri Dep't of Corr.,* 372 F.3d 979, 983 (8th Cir. 2004). It is well-established in the Eighth Circuit, however, that:

> [W]hen faced with both a Free Exercise claim and a RLUIPA claim, a court must, as a threshold matter, inquire as to whether the prison has placed a "substantial burden" on the prisoner's ability to practice his religion. Once it is determined that a regulation imposes a substantial burden on a prisoner, the review of that burden under the Free Exercise Clause differs from RLUIPA. If the prisoner fails to put forth sufficient evidence that his ability to practice his religion has been substantially burdened, then the court need not apply the *Turner* test to the Free Exercise claim and the strict scrutiny test to the RLUIPA claim.

*Gladson*, 551 F.3d at 833 (internal citations and quotations omitted).

Plaintiff failed to put forth sufficient evidence to meet the threshold requirement. In his deposition for this case, Plaintiff testified that there were "four or five" Bibles for the Wiccan faith.

5

(ECF No. 58-1 at 13). He testified he already had another Wiccan Bible in his possession at the time he requested the Wiccan Bible at issue in this case. (*Id*. at 11). Plaintiff was unable to describe why the Wiccan Bible which was denied was more necessary or "special" than the one he already had in his cell. Instead, he testified that "[t]he only thing that's special about it is that it was in the –ADC when I ordered it. . .I don't understand how they could have let all these bibles in and then when I order it . . . I don't have a deal, and then I don't even have the right to grieve it." (*Id*.). Regarding the Book of Grimoires, Plaintiff was similarly unable to describe why this book was necessary for him to practice his religion. Instead, he testified that both the Wiccan Bible he was denied and the Book of Grimoires were "necessary mainly because I ordered them, and I didn't think they were that big of an issue." (*Id*. at 33).

Thus, Plaintiff's own testimony plainly states that neither of these books were necessary to practice his Wiccan religion. Instead, he is merely expressing a fit of pique because he ordered the books and felt he was entitled to them. Plaintiff does not have the right, under either the constitution or RLUIPA, to receive every religious text he chooses to order. *See Murphy v. Missouri Department of Corrections*, 372 F.3d 979, 983 (8th Cir. 2004) ("A prisoner need not be afforded his preferred means of practicing his religion as long as he is afforded sufficient means to do so.") Plaintiff therefore failed to show that his ability to practice his religion has been substantially burdened by the denial of a second Wiccan Bible or a Book of Grimoires, and it is not necessary to apply the *Turner* test to the Free Exercise claim or the strict scrutiny test to the RLUIPA claim.

Defendants are entitled to summary judgment as a matter of law on these claims.

### C. Fourteenth Amendment Due Process Claim – Book of Grimoires

When prisoner mail is rejected by a detention facility, prisoners have a procedural due process right "to be notified of the rejection and have a reasonable opportunity to protest the

decision." *Bonner v. Outlaw*, 552 F.3d 673, 676 (8th Cir. 2009). Plaintiff's claim survived the motion to dismiss because the denial documents submitted by both parties discussed the Wiccan Bible but did not mention the Book of Grimoires.

The Ouachita River Unit has in effect policy O.R.U. 16.1.0, which governs inmate communication and mail. This policy informs inmates that any mail or package containing contraband will be denied it its entirety. (ECF No. 58-6 at 4). According to Defendant Faust, inmates are "well aware that when they order multiple publications in the same order and the publications are shipped in the same package, per O.R.U. 16.1.0, if one of the publications in the package is denied, then all of the publications in the package are denied." (*Id*. at 5). Defendants attached a copy of the policy, which expressly states: "Mail or packages containing contraband will be denied in its entirety." (ECF No. 58-16 at 2, ¶ VI (A)). The policy was first put into effect on April 15, 2004. (ECF Nos. 58-16 at 1). At his deposition, Plaintiff testified that he became aware of the policy "after they took and started interfering with my mail." (ECF No. 58-1 at 31). Plaintiff was shown the policy language and testified he understood it meant that "if you find something, you can take everything." (ECF No. 58-1 at 32).[2]

Based on this policy, Plaintiff was given both actual and constructive notice of the decision to deny his books, and ample opportunity to protest the decision. In his deposition, Plaintiff testified that the Wiccan Bible and Book of Grimoires were ordered together on April 14, 2016. (ECF No. 58-1 at 34). Plaintiff repeated this statement in his Affidavit in response to the Summary Judgment Motion. (ECF No. 68 at 1). Defendants confirmed that the books were part of the same order with a copy of the order itself. (ECF No. 58-2). When Plaintiff attempted to mail a letter to

---

[2] In his Statement of Disputed Facts, Plaintiff alleges he was not aware of this policy at the time he received his books, and "only admitted he could see the policy [at the deposition] because she showed it to me." (ECF No. 69 at 6, ¶ 62). This allegation, however, does not affect the analysis in this case.

the bookseller inquiring about the status of his order on May 25, 2016, the letter was returned from the mailroom with a "sticky note" stating: "These books were sent to publication review. You did receive them." (ECF No. 68 at 2).

On June 2, 2016, Plaintiff received a notification from the Publication Review Committee on June 2, 2016, indicating his Wiccan Bible met the criteria for publication review and would be held until the end of the review and appeal process. (ECF No. 58-3 at 1). On June 14, 2016, Plaintiff was notified that the Wiccan Bible had been denied for nudity and the promotion of witchcraft. (ECF No. 58-3 at 5). Plaintiff appealed the decision on June 17, 2016. (ECF No. 58-3 at 4). On August 3, 2016, Plaintiff received notification that his Wiccan Bible appeal had been denied and was given several options for the disposal of his books. (ECF No. 58-3 at 2). Plaintiff did not provide any response to the options. (ECF No. 58-3 at 2; 58-7 at 3).

Plaintiff also filed Grievance OR-16-00773 on June 2, 2016. (ECF No. 58-5 at 1). He was informed that denial of a publication was not grievable, and his grievance appeal was denied as untimely. (ECF No. 58-5).

Thus, Plaintiff was given notice of the denial of the book package and protested the denial of the book package through the publication review process. As there was no violation of Plaintiff's procedural due process right concerning either book, Defendants are entitled to summary judgment as a matter of law on this claim.

### D. Official Capacity Claims for Prospective Injunctive Relief Against Defendants Kelley and Payne

As there were no violations of Plaintiff's rights under either the constitution or RLUIPA, Defendants are entitled to summary judgment on these claims as a matter of law.

### E. Qualified Immunity

As there were no violations of Plaintiff's rights under either the constitution or RLUIPA, it is not necessary to address the issue of qualified immunity.

### F. Ark. Code § 16-123-401 Claims

As there were no violations of Plaintiff's rights under either the constitution or RLUIPA, it is not appropriate to exercise supplemental jurisdiction for Plaintiff's alleged claims concerning Ark. Code § 16-123-401.

## IV. CONCLUSION

For these reasons, IT IS ORDERED that Plaintiff's claims are DISMISSED WITH PREJUDICE.

IT IS SO ORDERED this 13th day of November 2018.

Judgment will be entered accordingly.

*/s/ P. K. Holmes, III*
P. K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE